IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DANNY HAWK,

      Plaintiff,            CIVIL ACTION FILE

   v.                        NO. 1:10-CV-0239-JFK

ATLANTA PEACH MOVERS, INC.,

      Defendant.

## FINAL ORDER AND OPINION

Plaintiff Danny Hawk filed the above-styled employment discrimination action against Defendant Atlanta Peach Movers, Inc., in the Superior Court of Fulton County on December 18, 2009, and it was removed to this court on January 27, 2010. [Doc. 1]. Plaintiff Hawk alleges that Defendant engaged in retaliation by terminating his employment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.* [Doc. 1]. Defendant has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on Plaintiff's claim based upon the pleadings, statement of material facts, exhibits, and discovery materials submitted to the court. [Doc. 43]. The parties have consented to jurisdiction by the undersigned Magistrate Judge. [Docs. 20, 21].

## I.    Preliminary Issues

Plaintiff Hawk has not filed a response in opposition to Defendant's motion for summary judgment.  Instead, Plaintiff moves to strike a number of documents filed by Defendant.  [Doc. 45].  Plaintiff argues that the court should strike Defendant's motion for summary judgment, Defendant's statement of material facts, and an affidavit filed by Timothy Huff, Operations Manager for Defendant Atlanta Peach Movers.  [Id.].

Motions to strike are provided for by Federal Rule of Civil Procedure 12(f), which states in pertinent part:

> The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act: . . .
>
> > (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f) (as amended 2009).  The rule explicitly provides that the object being stricken must be in a "pleading."  "Only material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly."  2 Moore's Federal Practice, § 12.37[2] (Matthew Bender 3d ed.).  The Federal Rules define a "pleading" as a complaint; an answer to a complaint, to a counterclaim, to a cross-claim; a third-party complaint and a answer thereto; and, if

2

ordered by the court, a reply to an answer.  Fed. R. Civ. P. 7(a).  "Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike."  2 Moore's Federal Practice, § 12.37[2] (Matthew Bender 3d ed.).  Accord Jeter v. Montgomery County, 480 F. Supp. 2d 1293, 1296 (M.D. Ala. 2007) ("From Rules 12(f) and 7(a), it follows perforce that a response in opposition to a motion to dismiss is not a 'pleading[,' and a]ccordingly, the court will deny the [C]ounty's motion to strike. . . ."); Sum of $66,839.59 Filed in Registry of Court v. I.R.S., 119 F. Supp. 2d 1358, 1359 n.1 (N.D. Ga. 2000) ("With respect to the IRS' motion to strike, because a motion to strike is only appropriate with regard to a pleading and an affidavit is not a pleading (see Fed. R. Civ. P. 7), the motion to strike Calloway's affidavit is procedurally improper.").  In Plaintiff's motion, he seeks to have the court strike Defendant's summary judgment motion, Defendant's statement of material facts, and Timothy Huff's affidavit.  Because none of these documents are pleadings, Plaintiff's motion [Doc. 45] to strike is **DENIED**.

The court will, however, consider Plaintiff's motion to strike insofar as it is a notice of objection.  With regard to Defendant's summary judgment motion and statement of material facts, Plaintiff has offered nothing to support his contention that these documents should not be considered by the court.  Instead, Plaintiff repeatedly

makes conclusory allegations such as: "Here, defendant's frivolous motion challenging the pleadings are intended solely to delay trial and harass the plaintiff." [Doc. 45 at 23]. Although unclear, it appears that the main premise underlying Plaintiff's motion to strike is that he does not want the summary judgment to be granted. This is obviously insufficient to support his objection.

Plaintiff also argues that pursuant to Federal Rule of Evidence 408, Defendant is not permitted to rely on "positions taken by Plaintiff in their meeting and conference on June 15, 2009 and July 3, 2009." [Doc. 45 at 25, 46]. According to Plaintiff, "The parties have agreed not long ago that these employment actions would be protected by FRE 408, and these papers reflect compromise positions taken by Plaintiff." [Id.]. Plaintiff's argument is without merit. Federal Rule of Evidence 408 prohibits *inter alia* the use of documents related to settlement negotiations "to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount. . . ." Fed. R. Evid. 408(a). The Eleventh Circuit has held that "the test for whether statements fall under this rule is whether the statements or conduct were intended to be part of the negotiations toward compromise." Blu-J, Inc. v. Kemper C.P.A. Group, 916 F.2d 637, 642 (11th Cir. 1990) (citations and internal quotation marks omitted). The statements made during meetings on June 25, 2009, and July 3, 2009, to which

Plaintiff objects were not part of any negotiations to settle a claim. Instead, the meetings occurred while Plaintiff was employed with Defendant and were part of disciplinary actions taken by Defendant against Plaintiff for alleged misconduct in the workplace. [Huff Affidavit ("Aff.") ¶¶ 8, 9]. Statements made during these disciplinary meetings do not fall under Rule 408 and are admissible. For these reasons, Plaintiff's objection to Defendant's motion for summary judgment and statement of material facts is **OVERRULED**.

With regard to the affidavit of Timothy Huff, Plaintiff argues that the court should not consider this document because it is a sham affidavit. [Doc. 45 at 13-15]. "A court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction." Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir. 2010) (citing Van T. Junkins and Assoc., Inc. v. U.S. Industries, Inc., 736 F.2d 656 (11th Cir. 1984)). "[C]ourts must 'find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit.'" Id. (quoting Allen v. Bd. of Pub. Educ. for Bibb Cty., 495 F.3d 1306, 1316 (11th Cir. 2007)). The deficiency in Plaintiff's "sham affidavit" argument is that there is no evidence before the court that Huff's affidavit contradicts any previous deposition testimony. While

it is clear that Plaintiff does not agree with statements made by Huff in his affidavit, Plaintiff's failure to cite to any inherently inconsistent testimony renders his "sham affidavit" argument unpersuasive.

Plaintiff Hawk also objects to Huff's affidavit because, according to Plaintiff, it "set[s] forth conclusory arguments rather than statements of fact based on personal knowledge. . . ." [Doc. 45 at 30]. Plaintiff goes on to argue, "Many of the factual assertions in Huff's Declaration violate FRCP 56(e)(1) and FRE 602 because the Declaration do [sic] not set forth a foundation establishing that these declarants [sic] have personal knowledge of their assertions." [Doc. 45 at 48]. Plaintiff also objects to the exhibits attached to Huff's affidavit. Plaintiff's arguments are without merit.

Federal Rule of Civil Procedure 56(c) provides in part: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4) (as amended 2010). Federal Rule of Evidence 602 provides in part: "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Despite Plaintiff's

AO 72A
(Rev.8/82)

argument to the contrary, Huff has offered sufficient evidence to show that his affidavit satisfies the requirements of the Federal Rules.

Plaintiff has not offered support for his assertion that Huff's affidavit contains conclusory arguments. The affidavit, instead, consists of factual assertions which Huff stated were based on his personal knowledge.[1]  [Huff Aff. ¶ 1].  Huff asserted, "I have served as the Operations Manager for APM [Atlanta Peach Movers] for all times relevant to this lawsuit, and have been actively involved in APM's dealings with and subsequent litigation with plaintiff Danny Hawk ('Plaintiff')."  [Huff Aff. ¶ 2].  Huff also stated that in his position as Operations Manager, he is responsible for disciplinary decisions relating to drivers.  [Huff Aff. ¶ 5].  In addition, Huff stated that he met with other managers in June 2009 to make decisions about the company-wide lay-offs that eventually led to Plaintiff's termination, which is the basis of Plaintiff's Title VII retaliation claim currently before the court.  [Huff Aff. ¶¶ 11, 12, 20, 22].  Based on these facts, the court finds that the affidavit of Timothy Huff clearly establishes that he is competent to testify and has personal knowledge of the facts asserted in the affidavit.

---

[1]Huff also stated that he is "competent in all respects to testify" about the matters set forth in the affidavit.  [Huff Aff. ¶ 1].

As noted *supra*, Plaintiff Hawk not only objects to Huff's affidavit, he objects to the exhibits attached to the affidavit.  The attached exhibits consist of the following: the first disciplinary action issued to Plaintiff, dated June 15, 2009; the second disciplinary action issued to Plaintiff, dated July 3, 2009; and the termination letter issued to Plaintiff, dated July 14, 2009.  [Huff Aff. ¶¶ 8, 9, 22, Exs. A, B, C].  Documentary evidence is admissible if the proponent offers a foundation of "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a).

Huff asserted that as Operations Manager, he is responsible for the decisions regarding disciplinary measures taken against drivers.  [Huff Aff. ¶ 5].  Huff was the manager who signed both disciplinary actions and the termination letter.  [Huff Aff. ¶¶ 8, 9, 22, Exs. A, B, C].  Moreover, while Plaintiff now contends that the documents are not authenticated, he cites to and quotes from all three documents in his own affidavit.  [Doc. 42 at 3-4, 8-11].  The court finds that there is sufficient evidence to support a finding that the exhibits attached to Huff's affidavit are what he claims. Huff's affidavit and the attached exhibits, therefore, are admissible and Plaintiff's objection to them is **OVERRULED**.

8

Within Plaintiff's motion to strike is also a request for additional time to file a response to Defendant's summary judgment motion. [Doc. 45 at 5]. Local Rule 7.1B provides in part: "Any party opposing a motion shall serve the party's response, responsive memorandum, affidavits, and any other responsive material not later than fourteen (14) days after service of the motion, except that in cases of motion for summary judgment the time shall be twenty-one (21) days after the service of the motion." L.R. 7.1B N.D. Ga. Plaintiff was also informed the following in a notice issued by the court on August 11, 2010: "Pursuant to Local Rule 56.1B., the respondent to a summary judgment motion must include with the response brief a separate **response to the movant's statement of material facts**. The respondent must admit or deny each of the movant's numbered facts." [Doc. 40 at 1-2 (emphasis in original)]. Defendant's summary judgment motion and statement of material facts were filed on September 28, 2010. [Doc. 43]. Plaintiff Hawk had three weeks to file a timely response to Defendant's motion and statement of material facts, but he made the decision not to file a response as directed by the court and, instead, to file a 56-page motion to strike. [Doc. 45]. Although it has been more than six months since Defendant filed its summary judgment motion, Plaintiff has yet to file a response, and he has offered no evidence justifying his failure to respond. However, the court notes

9

that within the motion and brief filed by Plaintiff [Doc. 45] and the "affidavit" of Plaintiff [Doc. 42], Plaintiff presents reasons and arguments in opposition to the motion for summary judgment, which (to the extent supported by citation to the record evidence) will be considered by the court in ruling on the motion for summary judgment.  In light of these facts, the court will not grant Plaintiff leave to file a response that was due more than five months ago.  Therefore, insofar as Plaintiff's motion to strike [Doc. 45] includes a motion for an extension of time to file a response to Defendant's summary judgment motion, this motion is **DENIED**.

## II.    Facts[2]

---

[2]Because Plaintiff did not file a response to either Defendant's summary judgment motion or statement of material facts, he has failed to comply with Local Rule 56.1B(2), N.D. Ga.  As a result, the rule provides in pertinent part that:

> This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence . . .; (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1).

L.R. 56.1B(2)a.(2), N.D. Ga.; see also Thyssen Elevator Co. v. Drayton-Bryan Co., 106 F. Supp. 2d 1342, 1344 n.1 (S.D. Ga. 2000) ("Unrebutted, evidentially supported Fact Statements are deemed admitted under [N.D.] Ga. Local Rule [56.1B(2)] and Dunlap v. Transamerica Occidental Life Ins. Co., 858 F.2d 629, 632 (11th Cir. 1988)."). To the extent that each of Defendant's facts is supported by evidence in the record, the

AO 72A
(Rev.8/82)

When evaluating the merits of a motion for summary judgment, the court must "view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party." Comer v. City of Palm Bay, Florida, 265 F.3d 1186, 1192 (11th Cir. 2001). However, mere conclusions and unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. See Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). Therefore, the evidence presented by the parties having been evaluated in accordance with the foregoing principles, the following facts are deemed to be true for the limited purpose of evaluating Defendant's motion [Doc. 43] for summary judgment.

Defendant Atlanta Peach Movers ("APM") is a minority-owned company whose shareholders are primarily African-Americans. [Defendant's Statement of Material Facts ("DSMF") ¶ 1]. APM provides moving and storage services to individuals and businesses. [DSMF ¶ 2]. As part of its business, APM employs drivers who are paid hourly wages. [DSMF ¶ 3]. Timothy Huff is the Operations Manager for APM, and he is responsible for disciplinary decisions relating to company drivers. [DSMF ¶ 4].

---

fact is deemed to be admitted.

Plaintiff Danny Hawk was hired by APM on May 5, 2009, as an entry-level driver. [DSMF ¶ 5]. Hawk was paid $12.50/hour for his services as a driver. [DSMF ¶ 6]. On June 15, 2009, APM issued Plaintiff Hawk a disciplinary warning for allegedly "inappropriate behavior on a job site, not following the supervisor's instruction." [DSMF ¶ 7; Huff Aff. ¶ 8, Ex. A]. In the "employee's comments" section of the warning notice, Plaintiff wrote: "I sign this document; however without specific classification of instruction allegedly violated; I do not waived [sic] right to object." [Doc. 42 at 4; Huff Aff. ¶ 8, Ex. A]. On July 3, 2009, APM issued Plaintiff a second warning notice for allegedly leaving keys in an unlocked company van over the weekend. [DSMF ¶ 8; Huff Aff. ¶ 9, Ex. B]. As a disciplinary measure, accompanying the July 3rd disciplinary action, APM suspended Plaintiff from work for one week. [DSMF ¶ 9]. Plaintiff wrote the following statement in the "employee's comments" section of the warning notice: "I did not leave keys in pack-van. Request company video of day in Question." [Doc. 42 at 5; Huff Aff. ¶ 9, Ex. B].

Toward the end of June 2009, several APM managers met to discuss company-wide lay-offs due to the economic downturn and APM's decreasing business. [DSMF ¶ 10]. APM decided to eliminate a number of junior positions, such as lower-level supervisors and drivers, that could be combined in order to save the jobs

12

of key senior employees. [DSMF ¶ 11]. APM used certain criteria to determine which employees to lay-off. [DSMF ¶ 12]. In evaluating its drivers, APM considered the driver's experience and duration of employment with APM. [DSMF ¶ 13]. While APM was evaluating which employees to lay-off, three drivers decided to leave their employment with APM because they could not get enough working hours. [DSMF ¶ 14]. Raymond Kemp resigned on June 26, 2009, Abdul Leiba resigned on July 2, 2009, and Thomas Williams resigned on July 10, 2009. [DSMF ¶ 15].

Major contributing factors in the managers' discussion of lay-offs were the decreasing amount of available work and the necessity of adequately compensating APM's key personnel, such as supervisors and senior employees. [DSMF ¶ 16]. According to Huff, based on these criteria, Plaintiff Hawk was one of the drivers APM discussed laying off because he was an entry-level driver hired by APM in May 2009. [DSMF ¶ 17; Huff Aff. ¶ 17]. With the resignation of three drivers, APM determined that it needed to lay-off only one additional employee to provide what it considered adequate compensation to its senior and upper-level employees. [DSMF ¶ 18]. Following the resignation of Kemp, Leiba, and Williams, Plaintiff Hawk was the least experienced and/or shortest tenured driver in APM's employ at that time. [DSMF ¶ 19]. Plaintiff continued to be employed as a driver for APM until July 14, 2009, when

13

he was laid off.  [DSMF ¶ 21].  Hawk was given a letter explaining the reason for his termination as "Lack of Work."  The termination letter also informed him that he was eligible to file for unemployment compensation because the termination qualified as a lay-off.  [DSMF ¶ 22; Huff Aff. ¶ 22, Ex. C].

On the same day he learned of his termination, Plaintiff Hawk contacted the Equal Employment Opportunity Commission ("EEOC") and completed an intake questionnaire with an accompanying letter.  [Doc. 45, Ex. 1].  In the letter dated July 14, 2009, Plaintiff alleged that he was terminated because of an on-the-job injury he sustained on June 5, 2009, and because he opposed Timothy Huff's "harassment, embarrassment and intimidation and other unfair and illegal employment practices." [Doc. 45, Ex. 1].  Plaintiff also stated that he had faxed documentation on July 6, 2009, to Orlando Lynch, the owner of APM, "about being slandered and lied; being written up for things I didn't do and other contents."  [Id.].

On July 22, 2009, Plaintiff filed a charge of discrimination with the EEOC asserting that APM had violated Title VII by terminating his employment on July 14, 2009.  [DSMF ¶ 23; Doc. 43, Ex. B].  In the charge, Plaintiff alleged that Defendant terminated his employment in retaliation for a complaint he had made about a one week suspension.  [Doc. 43, Ex. B].  In the section of the charge form which asked

14

what type of discrimination was being alleged, Plaintiff checked the box marked "retaliation."  [Id.].  He left all of the other boxes unchecked.  [Id.].  In the narrative portion of the charge form, Plaintiff wrote:

> I was hired by the above-named employer on May 5, 2009 as a Driver. On July 6, 2009, I complained to Mr. Orlando Lynch, Owner, regarding my one week suspension issued by Mr. Timothy Huff, Operations Manager.  On July 14, 2009, I was discharged.
>
> My termination letter issued by Mr. Timothy Huff, Operations Manager, states: "Lack of Work" as the reason for my discharge.
>
> I believe I have been retaliated against for my complaint of opposition regarding my suspension in violation of Title VII of the Civil Rights Act of 1964, as amended.

[Doc. 43, Ex. B].  The EEOC issued Plaintiff a Right to Sue Letter on October 8, 2009, upon determining that it would be unable to reach the merits of his claim within 180 days.  [DSMF ¶ 25; Doc. 43, Ex. C].

Plaintiff Hawk filed a complaint in the Superior Court of Fulton County on December 18, 2009, alleging that Defendant APM retaliated against him for complaining about a suspension from work arising from a violation of APM policies. [DSMF ¶ 26; Doc. 1].  Hawk listed retaliation under Title VII as the sole cause of action in his complaint.  [DSMF ¶ 27; Doc. 1].  APM filed its answer and removed the action to this court on January 27, 2010.  [DSMF ¶ 29].

15

Additional facts will be set forth below as they become necessary for discussion of Plaintiffs' claims.

## III.     Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (amended 2010). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2552 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. See Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2511 (1986).

The movant bears the initial burden of asserting the basis of his motion, and that burden is a light one. See Celotex, 106 S. Ct. at 2553. The movant is not required to negate his opponent's claim. See id. Rather, the movant may discharge this burden

merely by "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 2554.

When evaluating a motion for summary judgment, the court must view the evidence and factual inferences in the light most favorable to the nonmoving party. See Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1309 (11th Cir. 2001). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). Instead, "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." Fickling v. United States, 507 F.3d 1302, 1304 (11th Cir. 2007) (citing Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)). The court will apply these standards in ruling on the motion for summary judgment.

## IV.   Discussion

Plaintiff Danny Hawk alleges that Defendant APM terminated his employment in retaliation for prior complaints of discrimination in violation of Title VII. [Doc. 29]. Title VII acts to shield employees from retaliation for certain protected practices. Specifically, the statute provides, in pertinent part:

17

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).  The familiar <u>McDonnell Douglas</u> framework governs the allocation of burdens and order of presentation and proof, and they are as follows: (1) the plaintiff has the burden of proving a *prima facie* case of retaliation; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden (of production) shifts to the defendant to articulate some legitimate, non-discriminatory reason for the action taken against the employee; and (3) should the defendant carry this burden, the plaintiff must have an opportunity to prove that the legitimate reason offered by defendant was a pretext for retaliation.  <u>See</u> <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817, 1824-25 (1973).

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression. <u>Weeks v. Harden Mfg. Corp.</u>, 291 F.3d 1307, 1311 (11th Cir. 2002); <u>Wideman v. Wal-Mart Stores, Inc.</u>, 141 F.3d 1453, 1454 (11th Cir. 1998).  The plaintiff "'need not prove

18

the underlying claim of discrimination which led to [his] protest;' however, the plaintiff must have had a reasonable good faith belief that the discrimination existed." Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997) (quoting Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1494 (11th Cir. 1989)). Moreover, "[i]t is important to note that this circuit interprets the causation requirement broadly: 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" Robinson v. AFA Service Corp., 870 F. Supp. 1077, 1083 (N.D. Ga. 1994) (quoting EEOC v. Reichold Chems., Inc., 988 F.2d 1564, 1571 (11th Cir. 1993)); see also Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). There is no dispute that Plaintiff Hawk is able to establish the second *prima facie* element because he was terminated from his employment as a driver with Defendant APM on July 14, 2009.

The first and third *prima facie* elements require Plaintiff to show that he engaged in statutorily protected speech and that this protected speech was causally related to his termination. Plaintiff Hawk is unable to establish these elements. Plaintiff Hawk contacted the EEOC and completed an intake questionnaire with an accompanying letter. [Doc. 45, Ex. 1]. He also submitted a charge of discrimination to the EEOC. [Doc. 43, Ex. B]. However, all of Plaintiff's complaints to the EEOC occurred *after*

19

Defendant had terminated his employment.  Assuming that Plaintiff's complaints to the EEOC constitute protected expression, the court finds that no reasonable jury could conclude that he is able to show a causal connection between these complaints and his termination.  At the time Defendant APM made the decision to fire him, Plaintiff had made no complaints of discrimination to the EEOC.  See Hopkins v. Saint Lucie County School Bd., 399 Fed. Appx. 563, 566-67 (11th Cir. 2010) (finding no *prima facie* case of retaliation because both of the plaintiff's "administrative complaints were filed months *after* the school district fired him") (emphasis in original).

Plaintiff Hawk also argues that he engaged in protected expression when he complained about the disciplinary warning issued to him on June 15, 2009, and his suspension issued on July 3, 2009.  [Doc. 42 at 4-5].  Defendant APM gave Plaintiff his first disciplinary warning on June 15, 2009, for allegedly "inappropriate behavior on a job site, not following the supervisor's instruction."  [DSMF ¶ 7; Huff Aff. ¶ 8, Ex. A].  Defendant APM issued the July 3, 2009, suspension to Plaintiff after he allegedly left keys in an unlocked company van over the weekend.  [DSMF ¶¶ 8, 9; Huff Aff. ¶ 9, Ex. B].  Plaintiff asserts that because he voiced opposition to both the warning and suspension, he is able to satisfy both the protected expression and causal link *prima facie* elements.  [Doc. 45 at 50].

20

In order for a court to find that an employee's opposition to some employment action qualifies as protected speech, "the employee must, at the very least, communicate [his] belief that discrimination is occurring to the employer." Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1323 (N.D. Ga. 2009) (citing Webb v. R & B Holding Co., Inc., 992 F. Supp. 1382, 1389 (S.D. Fla. 1998)). The employee, in other words, must show that he opposed the employment action or decision because it was discriminatory. See Jurado v. Eleven-Fifty Corp., 813 F.2d 1406, 1411 (9th Cir. 1987) (finding expression not protected because plaintiff "has not shown that he ever opposed the format change as discriminatory before he was fired[; instead, h]e merely opposed the change for personal reasons"). "It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred." Webb, 992 F. Supp. at 1389.

In the present case, Plaintiff Hawk has failed to offer evidence showing that he opposed his suspension because it was based on race or sex or any other protected class. In the "employee's comments" section of the warning notice issued to him on June 15, 2009, Plaintiff wrote: "I sign this document; however without specific classification of instruction allegedly violated; I do not waived [sic] right to object." [Doc. 42 at 4; Huff Aff. ¶ 8, Ex. A]. After Plaintiff was issued the July 3, 2009,

21

disciplinary warning and suspension for allegedly leaving the keys in a company vehicle, he wrote the following statement in the "employee's comments" section of the warning: "I did not leave keys in pack-van.  Request company video of day in Question."  [Doc. 42 at 5; Huff Aff. ¶ 9, Ex. B].  Plaintiff wrote in his letter to the EEOC dated July 14, 2009, that during his employment with Defendant APM, he opposed Timothy Huff's "harassment, embarrassment and intimidation and other unfair and illegal employment practices."[3]  [Doc. 45, Ex. 1].  He wrote in the same letter that shortly after his suspension, he had complained to the owner of Defendant APM "about being slandered and lied; being written up for things I didn't do. . . ." [Doc. 45, Ex. 1].  Plaintiff argues that these complaints establish that he engaged in protected expression.  [Doc. 42 at 5].  Plaintiff's arguments are unpersuasive.

Plaintiff Hawk has failed to point to evidence in the record that prior to his termination he communicated to Defendant APM his belief that discrimination had occurred.  Plaintiff stated that he complained about the way Huff treated him, the disciplinary warnings, and the suspension.  [Doc. 42 at 4-5; Huff Aff. ¶¶ 8, 9, Exs. A, B; Doc. 45, Ex. 1].  But the basis of these complaints was that the treatment he

_____

[3]Plaintiff also alleged in the letter to the EEOC that he was terminated because he had sustained an on-the-job injury on June 5, 2009.  [Doc. 45, Ex. 1].

22

received had been unfair, illegal in some unspecified way, and/or based on false information.   [Id.].   A reasonable jury could not find that Plaintiff's complaints constitute protected expression under Title VII because he did not inform APM that he had been subjected to discrimination based on race, sex, or some other protected class.  See Brown v. City of Opelika, 211 Fed. Appx. 862, 864 (11th Cir. 2006) ("We affirm the district court's judgment because, as the court correctly noted, the record contained no evidence that Brown engaged in a protected activity by making a complaint about racial discrimination or harassment."); Galdieri-Ambrosini v. National Realty & Development Corp., 136 F.3d 276, 292 (2nd Cir. 1998) ("[Plaintiff's] complaints to Simon and Chiaro did not state that [she] viewed Simon's actions as based on her gender, and there was nothing in her protests that could reasonably have led National Realty to understand that that was the nature of her objections."). Accordingly, Plaintiff cannot establish a *prima facie* case of retaliation.  Defendant's summary judgment motion [Doc. 43] is **GRANTED** on Plaintiff's retaliation claim.

## V.   Conclusion

For all the foregoing reasons and cited authority, the court **ORDERS** that Plaintiff Danny Hawk's motion [Doc. 45] to strike is **DENIED** and insofar as he has

moved [Doc. 45] for an extension of time to file a response to Defendant's summary judgment motion, this motion is **DENIED**.

The court further **ORDERS** that Defendant APM's motion [Doc. 43] for summary judgment is **GRANTED** on Plaintiff's Title VII retaliation claim and that it be **DISMISSED WITH PREJUDICE**.

Judgment shall be entered in favor of Defendant.

**SO ORDERED**, this 21st day of April, 2011.

JANET F. KING
UNITED STATES MAGISTRATE JUDGE

24